**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-2010**

_____

OAKLEY FERTILIZER, INC., an Arkansas corporation,

Plaintiff – Appellant,

v.

SAVAGE SERVICES CORPORATION, a Utah corporation; CAROLINA MARINE TERMINAL, LLC,

Defendants – Appellees.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Terrence W. Boyle, District Judge.  (7:22-cv-00158-BO-RJ)

_____

Submitted:  April 14, 2025                    Decided:  August 1, 2025

_____

Before AGEE, WYNN, and RUSHING, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**ON BRIEF:** David S. Mitchell, Jr., Luke E. Vance, ROSE LAW FIRM, A PROFESSIONAL ASSOCIATION, Little Rock, Arkansas; Philip J. Mohr, Jesse Schaefer, WOMBLE BOND DICKINSON (US) LLP, Greensboro, North Carolina, for Appellant. Donald R. Pocock, AKERMAN LLP, Winston-Salem, North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal is about the scope of a contract (the Agreement) between Oakley Fertilizer, Inc. (Oakley) and Carolina Marine Terminal, LLC (CMT). The district court held that the Agreement applied only to potash, to the exclusion of all other fertilizers, and therefore granted summary judgment in favor of CMT and dismissed its co-defendant, Savage Services Corporation. That was error. Because the district court misinterpreted the Agreement, we reverse and remand for further proceedings.

In 2018, Oakley and CMT entered the Agreement, which covers the stevedoring and storage of bulk fertilizer products that Oakley sought to ship to CMT's facility at a port in Wilmington, North Carolina. The Agreement was to run for a term of five years. In 2022, however, CMT refused to allow Oakley to bring another vessel to the Wilmington facility unless the vessel was carrying potash, a specific type of bulk fertilizer. According to CMT, the Agreement applied only to potash. Oakley sought to ship a different fertilizer, diammonium phosphate, to CMT's facility based on Oakley's reading of the Agreement as covering all bulk fertilizer products, excluding urea. The parties reached an impasse, and Oakley sued CMT and Savage, seeking a declaratory judgment and damages for breach of contract and tortious interference. CMT counterclaimed against Oakley for breach of contract. After discovery, the parties filed competing motions for summary judgment. The district court granted summary judgment in favor of CMT, and dismissed the claims against Savage, based on the court's conclusion that the Agreement applies only to potash and no other fertilizers. Oakley appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291.

2

We review the district court's summary judgment ruling de novo. *United States v. Turner Constr. Co.*, 946 F.3d 201, 206 (4th Cir. 2019). Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under North Carolina law, which governs the Agreement, "when the terms of a contract are plain and unambiguous . . . [t]he contract is to be interpreted as written." *State v. Philip Morris USA Inc.*, 685 S.E.2d 85, 91 (N.C. 2009) (internal quotation marks omitted). When a contract "contains a definition of a term used in it, this is the meaning which must be given to that term wherever it appears in the [contract], unless the context clearly requires otherwise." *Id.* (internal quotation marks omitted).

In its first recital, the Agreement defines the term "Product" as "bulk fertilizer products, excluding urea." J.A. 72. The Agreement then uses the defined term "Product" throughout its provisions. For example, the Agreement's "Services" provisions obligate CMT to "[u]nload Product from vessels," "[m]aintain an average unloading rate of 9,600 short tons of Product per Weather Working Day," "[p]rovide storage of bulk Product," and "[p]rovide daily transmissions of inventory including Product received, stored, and shipped." J.A. 75. The Agreement's fee provisions similarly focus on "Product." *See*, *e.g.*, J.A. 77 (setting an unloading fee of $15.80 "per short ton of Product"); J.A. 78 (setting a loadout fee of $1.00 "per short ton of Product loaded on trucks for Oakley" and establishing a "minimum throughput of 50,000 short tons of Product unloaded from vessels per Contract Year"). Inserting the Agreement's definition of "Product" into these clauses establishes that CMT unambiguously promised to carry out its various contractual

3

obligations with respect to "bulk fertilizer product, excluding urea," not just potash. J.A. 72.

The district court came to the opposite conclusion because the Agreement at times refers specifically to potash. For example, the Agreement is titled "Potash Storage, Handling and Stevedoring Agreement," J.A. 72, and it gives Oakley "the exclusive right to receive and distribute potash at the Facility," J.A. 73. Another provision states that, "[u]pon commencement of laytime," CMT "guarantees discharge rates at a minimum of 9,600 short tons of Product (based upon the properties of potash)" per Working Weather Day. J.A. 78. These references to potash, however, do not modify the Agreement's definition of "Product," nor do they alter CMT's promises regarding "Product" elsewhere in the Agreement. *See Philip Morris USA*, 685 S.E.2d at 91 (when construing contracts, courts must "harmonize all clauses if possible" (internal quotation marks omitted)); *Canadian Am. Ass'n of Pro. Baseball, Ltd. v. Ottawa Rapidz*, 711 S.E.2d 834, 838 (N.C. Ct. App. 2011) (reasoning that "headings do not supplant" and should not "be read to the exclusion of" the contract language they precede).

Because the Agreement unambiguously applies not just to potash but also to other "bulk fertilizer products, excluding urea," the district court erred in granting summary judgment in favor of CMT. J.A. 72. The district court also dismissed Oakley's claims against Savage based solely on its erroneous interpretation of the Agreement. On appeal, Savage raises alternative grounds for affirmance, but we decline to address those arguments in the first instance. Accordingly, we reverse the district court's grant of summary

4

judgment for CMT and its dismissal of Oakley's claims against Savage.  We remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*